NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES R., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 22-05030 (GC) <br><br> **OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff James R.'s[1] appeal from the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C § 423, *et seq*. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Commissioner's decision is **AFFIRMED**.

**I.    BACKGROUND**

    **A.    PROCEDURAL HISTORY**

On March 16, 2020, Plaintiff James R. applied for disability insurance benefits alleging an onset date of February 22, 2019. (Administrative Record ("AR") 23.) On August 24, 2020, the

---

[1]  Plaintiff is identified by first name and last initial pursuant to D.N.J. Standing Order 2021-10.

Commissioner of Social Security denied Plaintiff's claim, and on January 12, 2021, again denied the claim upon reconsideration. (*Id*.) On June 9, 2021, the Administrative Law Judge held an Administrative Hearing, and then issued a decision on August 19, 2021, finding that Plaintiff was not entitled to the benefits. (*Id.* at 23-36.) On June 16, 2022, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-4.) On August 12, 2022, Plaintiff filed the present appeal in the United States District Court for the District of New Jersey. (ECF No. 1.) On September 15, 2022, the Commissioner submitted the Administrative Record. (ECF No. 4.) On March 24, 2023, Plaintiff filed his opening brief, pursuant to Local Civil Rule 9.1. (ECF No. 10.) On July 10, 2023, the Commissioner opposed. (ECF No. 16.) Plaintiff did not reply.

    **B.**    **THE ALJ'S DECISION**[2]

In his August 19, 2021 decision, the ALJ ruled that Plaintiff was not entitled to the claimed disability insurance benefits under the prevailing Administration regulations. (*See generally* AR 23-36.) The ALJ set forth the five-step process for determining whether an individual is disabled and entitled to said benefits and then examined the evidence at each step. (*Id.* at 24-25 (citing 20 C.F.R. § 404.1520(a)).)

First, the ALJ found that Plaintiff "did not engage in substantial gainful activity[3] during the period from his alleged onset date of February 22, 2019 through his date last insured of June 30, 2021." (*Id.* at 28 (citing 20 C.F.R. § 404.1571).)

---

[2]     The Administrative Record is available at ECF No. 4-1 through 4-10. This Opinion references page numbers in the Record only and not the corresponding ECF numbers. Page numbers for all other cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]     "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [he or she] do[es] less, get[s] paid less, or ha[s] less responsibility than when [he or she] worked before." *Id.*

Second, the ALJ determined that Plaintiff suffered from several "severe" impairments that "limit the claimant's ability to perform basic work activities, such as maintaining concentration," which impairments include bipolar disorder, anxiety, obsessive-compulsive disorder, and substance abuse. (*Id.* at 29 (citing 20 C.F.R. § 404.1520(c)).) As to the claimant's hypertension, hyperlipidemia, sleep apnea, and obesity, the ALJ found that they "have no more than a minimal effect on his ability to perform basic work activities." (*Id.*)

Third, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (hereinafter, "Appendix 1"). (*Id.* at 29-31 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) Detailing the relevant medical history and notes, the ALJ concluded that the evidence did "not show such marginal adjustment that the claimant has minimal capacity to adapt to changes in his environment or some new demands that are not already part of the claimant's daily life. The record also d[id] not show that simple changes or increased demands have led to a deterioration of the claimant's functioning or an inability to function outside the home." (*Id.* at 31.)

For the fourth step, the ALJ outlined Plaintiff's residual functional capacity ("RFC") and found that Plaintiff "can perform medium work as defined in 20 CFR 404.1567(c)," but cannot climb ropes, ladders, or scaffolds, and should not be subject to unprotected heights or hazardous machinery. (*Id.* at 34.) The ALJ also found that Plaintiff "can have occasional contact with

---

§ (a). "Gainful work activity is work activity that the claimant do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § (b).

supervisors, co-workers and the public, and is able to do only simple and routine tasks."[4] (*Id.*) Next, the ALJ found that Plaintiff "was unable to perform any past relevant work" through the date of last insured. (*Id.* at 34 (citing 20 C.F.R. § 404.1565).)

At the fifth and final step, the ALJ concluded that, "through the date last insured, considering the claimant's age, education, work experience, and residual functioning capacity," there were jobs that existed in significant numbers in the national economy that the claimant could have performed. (*Id.* at 35 (citing 20 C.F.R. §§ 404.1569, 404.1569a(a)).) These jobs include being "able to perform the requirements of representative occupations such as Hand Packer, Order Picker, and Cleaner," which combined included more than two million jobs in the national economy. (*Id.* (citations omitted).)

## II.   LEGAL STANDARD

### A.   DISABILITY DETERMINATION

An individual is "disabled" and therefore eligible for disability insurance benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A); *Plummer v.*

---

[4]   The Social Security Administration "determine[s] the physical exertion requirements of work in the national economy" by "classify[ing] jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, . . . he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

*Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).  A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

      The Commissioner employs a five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof for the first four steps of the analysis, and the burden shifts to the Commissioner for the fifth step.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

      *First*, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date.  20 C.F.R. § 404.1520(a)(4)(i), (b).

      *Second*, the Commissioner considers "the medical severity of [the claimant's] impairment(s)."  *Id.* § 404.1520(a)(4)(ii).  The claimant must have a "medically determinable impairment" or combination of impairments severe enough to limit the claimant's ability to perform basic work activities for a continuous period of at least twelve months.  *Id.*; *see also id.* at § 404.1509.  The claimant bears the burden of establishing the first two requirements, and failure to satisfy either of them automatically results in denial of benefits.  *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

      *Third*, if the claimant satisfies his or her burden at steps one and two, the Commissioner then considers the "medical severity of [the claimant's] impairment(s)."  *Id.* § 404.1520(a)(4)(iii). The impairment or impairments must meet or equal a listing in Appendix 1 of C.F.R. Part 404, Subpart P.  *Id.* § 404.1520(d).  The impairment or impairments are "medically equivalent to a listed impairment . . . if [they are] at least equal in severity and duration to the criteria of any listed impairment."  *Id.* § 404.1526(a).  If the claimant can make a sufficient showing at step three, he or she is deemed disabled.  *Id.* § 404.1520(a)(iii).

*Fourth*, if the claimant fails to make a sufficient showing at the third step, the analysis proceeds to an evaluation of the claimant's RFC and past relevant work. *Id.* § 404.1520(a)(4)(iv). RFC is the most the claimant can do in a work setting despite his or her limitations. *Id.* § 404.1545(a)(1). The Commissioner "assess[es] [the claimant's] residual functional capacity based on all the relevant evidence in [his or her] case record," and "consider[s] all of [the claimant's] medically determinable impairments," including ones that are not "severe" pursuant to §§ 404.1520(c), 404.1521, and 404.1523. *Id.* § 404.1545(a)(1)-(3). The Commissioner also assesses RFC based on "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). "The claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Plummer*, 186 F.3d at 428 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).

*Fifth*, if the claimant is incapable of performing past relevant work, the analysis proceeds to the final step. *See id.* § 404.1520(a)(4)(iv)-(v); *Plummer*, 186 F.3d at 428. At this step, the claimant must be unable to adjust to other work in light of her RFC, age, education, and work experience to be considered disabled. *See id.* § 404.1520(a)(4)(v), (g). Before denying a claim at step five, the Commissioner must show that the claimant is capable of other work existing "in significant numbers in the national economy." *Id.* § 404.1560(c)(2); *see Poulos*, 474 F.3d at 92.

**B.    STANDARD OF REVIEW**

District courts may "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the decision, the court determines whether the ALJ's findings are supported by substantial evidence. *Id.*; *see also Poulos*, 474 F.3d at 91. Substantial evidence is "such relevant

6

evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks and citation omitted).

The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). This limitation applies "even if [the court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

### III.     DISCUSSION

On review of the ALJ's decision (*see* AR 23-36) and the Administrative Record (*see generally* AR), the Court finds good cause to **AFFIRM** the Commissioner's decision. In reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter*, 642 F.2d at 706. Here, the ALJ provided sufficient reasoning for the Court to determine that the ALJ's findings are supported by substantial evidence.

In support of his appeal, Plaintiff advances three principal arguments: (1) "the ALJ in this matter is not a neutral magistrate," (2) there were "goal-directed errors" at steps three and four of

the analysis; and (3) "the decisional RFC is not based on substantial evidence . . . and fails to engage in the required functional analysis." (ECF No. 10 at 6-48.) The Court will address these arguments in turn.

### A.     FAIR HEARING

Plaintiff argues that the ALJ was biased against him because the ALJ "deni[es] more than 9 out of 10 disability appeals he decides, the manner in which findings and conclusions obviously convenient to denial are announced without rationale or connection to the evidence and Opinions of some Judges in this Court which recite some of these head-scratching abuses, taken in the aggregate, are sufficient to satisfy the requirement for finding the appearance of bias in this case." (*Id.* at 9-10.)

Social Security claimants are entitled to procedural due process. *See Richardson v. Perales*, 402 U.S. 389, 401-02 (1971). Because administrative law judges serve in a quasi-judicial capacity, they are required to be neutral arbiters throughout the administrative process. *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process."). Administrative law judges are presumed to be unbiased, but this presumption can be rebutted "by a showing of conflict of interest or some other specific reason for disqualification." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). The burden to establish disqualification lies with the party seeking it. *Id.*[5]

---

[5]     20 C.F.R. § 404.940 sets for the procedure for a party to disqualify an administrative law judge:

> An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any

"[D]ue process requires that any hearing afforded [a Social Security disability] claimant be full and fair." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 857 (3d Cir. 2007). An ALJ's bias can amount to a violation of Plaintiff's due process rights in certain circumstances. *See Valenti v. Com'r of Soc. Sec.*, 373 F. App'x 255, 258 (3d Cir. 2010) (finding bias where the ALJ engaged in "coercive, intimidating, and irrelevant questioning of the claimant"); *Ventura v. Shalala*, 55 F.3d 900, 905 (3d Cir. 1995)  (finding bias due to the ALJ's "offensive and unprofessional conduct"); *Hess v. Sec'y of Health, Ed. & Welfare*, 497 F.2d 837, 841 (3d Cir. 1974) ("Since readily obtainable information was not secured so as to resolve doubts about this unrepresented claimant's right to disability benefits, we believe that he did not receive the full hearing to which he was entitled.").

---

interest in the matter pending for decision. If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity. The administrative law judge shall consider your objections and shall decide whether to proceed with the hearing or withdraw. If he or she withdraws, the Associate Commissioner for Hearings and Appeals, or his or her delegate, will appoint another administrative law judge to conduct the hearing. If the administrative law judge does not withdraw, you may, after the hearing, present your objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge.

Upon the Court's review of the entire record, it appears that Plaintiff did not follow the procedure set forth in 20 C.F.R. § 404.940, as Plaintiff did not raise this issue during the administrative process by "notify[ing] the administrative law judge at your earliest opportunity." Still, the Court evaluates Plaintiff's bias claim on its merits because it is constitutional in nature and appears non-waivable. *See Culclasure v. Comm'r of Soc. Sec. Admin.*, 375 F. Supp. 3d 559, 570 (E.D. Pa. 2019) ("[W]e do not agree Social Security regulations require a claimant to raise a constitutional issue to the ALJ."); *see also Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 422 (M.D. Pa. 2019), *aff'd*, 948 F.3d 148 (3d Cir. 2020) ("We do not read [20 C.F.R. § 404.940] as establishing an explicit jurisdictional exhaust-or-forfeit requirement.").

Here, Plaintiff has not shown that the ALJ deprived him of a full and fair hearing. Plaintiff cites no evidence in the Record indicating that the ALJ was biased against him. Instead, Plaintiff chiefly relies on the ALJ's apparently high general rate of denying social security benefits and the allegation that other judges in the District have criticized the ALJ. Nevertheless, poor statistics in other cases are not sufficient for the Court to find bias. *See Kirlew v. Atty Gen. of U.S.*, 267 F. App'x 125, 128 (3d Cir. 2008) ("[W]e cannot base a finding of bias merely on repeated adverse rulings."); *Johnson v. Comm'r of Soc. Sec.*, Civ. No. 08-4901, 2009 WL 4666933, at *4 (D.N.J. Dec. 3, 2009), *aff'd*, 398 F. App'x 727 (3d Cir. 2010) ("[A]n ALJ's impartiality should not be judged by result or reputation or by statistics of how that judge has previously ruled." (citing *Mirabal v. Astrue*, Civ. No. 08-01079, ECF No. 17 at 16-17)). Further, Plaintiff cites no caselaw suggesting that previous criticism of an ALJ amounts to bias and the denial of a full and fair hearing. The Court therefore finds that there is no basis to rule that Plaintiff was denied a full and fair hearing in accordance with his due process rights as a result of any alleged bias.

  **B.** **SUBSTANTIAL EVIDENCE CHALLENGE**

Plaintiff next asserts that the ALJ's findings at steps two, three, and four are erroneous. Plaintiff contests the ALJ's findings that Plaintiff's hypertension, hyperlipidemia, sleep apnea, and obesity are "non-severe" impairments. (ECF No. 10 at 19-21 (citing AR at 28).) Plaintiff also disagrees with the weight and consideration that the ALJ gave to some of Plaintiff's psychological impairments, including his gender dysphoric disorder, depression, panic disorder with agoraphobia, and avoidance/dependence personality disorder. (*Id.* at 23.)

  1. STEP TWO

Step two of the analysis requires the ALJ to determine whether Plaintiff has a "medically determinable impairment" or a combination of impairments severe enough to limit the claimant's

ability to perform basic work activities for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. An impairment or combination of impairments is considered severe if they "significantly limit your physical or mental ability to do basic work activities."[6] *Id.* at § 404.1522(a). Basic work functions consist of walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1522(b)(1). "[T]he burden placed on an applicant at step two is not an exacting one." *Mark B. v. Comm'r of Soc. Sec.*, Civ. No. 21-12527, 2022 WL 3357913, at *4 (D.N.J. Aug. 15, 2022) (citing *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004)). Moreover, "the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Id.* (citing SSR 85-28).

Here, the ALJ found that Plaintiff has severe impairments such as bipolar disorder, anxiety, obsessive-compulsive disorder, and substance abuse, and the ALJ provided sufficient reasoning for the determination that Plaintiff's hypertension, hyperlipidemia, sleep apnea, and obesity have only a minimal effect on Plaintiff's ability to perform basic work activities. (AR 29.) For example, with regards to these latter impairments, the ALJ writes:

> The claimant told consultative examiner Dr. Barharlias that he has sleep apnea, but sleeps better now that he uses the machine.
>
> With regard to hypertension and hyperlipidemia, there is no evidence of significant related end organ damage, such as heart disease. Progress notes from Dr. Saulino from October 15, 2018 note that the claimant has had multiple ER evaluations for chest pain, which have been

---

[6] "Basic work activities" consist of the following: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

11

>negative. A November 11, 2018 stress test was indeterminate for myocardial ischemia, but there were no ischemic changes, no significant arrhythmias, average exercise capacity, and a normal blood pressure response. A February 9, 2019 echocardiogram revealed normal LV size and function, an ejection fraction of 55-60%, mild mitral valve and tricuspid valve regurgitation, and moderately elevated estimated right ventricular systolic pressure. Progress notes from Dr. Saulino from February 14, 2019 to February 27, 2020 note benign essential hypertension and chest pain.
>
>Progress notes from July 2, 2020 note that the claimant's EKG was abnormal, and the claimant reported a history of chest pain and shortness of breath, but a July 15, 2020 stress test revealed no definite evidence of ischemia and a preserved left ventricular ejection fraction. The claimant was noted to have controlled hypertension. A July 22, 2020 echocardiograph revealed normal left ventricular functioning and an ejection fraction of 55 to 60%. On August 4, 2020, the claimant reported improved chest pain. Benign essential hypertension was noted on August 27, 2020.
>
>[(*Id.*)]

The ALJ's finding that Plaintiff's hypertension, hyperlipidemia, sleep apnea, and obesity were non-severe is based on substantial evidence, including a review and discussion of the medical evidence that was presented. As to sleep apnea, the ALJ found that the claimant successfully managed it through the use of a sleep apnea machine. (*Id.*) As to hypertension and hyperlipidemia, the ALJ found, among other things, that there was no evidence of "significant related end organ damage" and progress notes indicated "benign essential hypertension and chest pain." (*Id.*) As to obesity, the ALJ found based on the medical evidence that the claimant had "average exercise capacity" and "normal blood pressure response" and there was no further indication that obesity alone or in combination significantly limited the claimant's ability to do basic work activities. (*Id.*) The ALJ thus sufficiently articulated his reasoning and the basis for finding that Plaintiff's conditions were non-severe impairments. *See Fatima S. v. Comm'r of Soc. Sec.*, Civ. No. 20-07094, 2022 WL 909674, at *7 (D.N.J. Mar. 29, 2022) ("The ALJ fully articulated his reasoning

in determining that 'five' of Plaintiff's impairments were non-severe at step two of the sequential evaluation process.").

Plaintiff also argues that the ALJ erred by not considering additional psychological impairments from which Plaintiff suffers on top of what the ALJ deemed severe. (ECF No. 10 at 23.) Earlier in his decision, the ALJ had noted that Plaintiff has a documented history of gender dysphoric disorder with a subsequent transgender surgery, panic disorder with agoraphobia, and a dependence and avoidance-based personality disorder, but did not expressly address these at step two. (AR 26, 29.) However, even if this omission was an error, it is not legally relevant because the ALJ found in Plaintiff's favor at step two and proceeded to the sequential evaluation process, and an ALJ's decision should be "read as a whole." *See Jones*, 364 F.3d at 505.

ALJs are not required to discuss every impairment or diagnosis in the record at step two, *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [claimant's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."), and because step two is a threshold analysis, once the ALJ finds any one impairment severe, the ALJ may move on to consider all impairments, severe or not, at subsequent steps. *See, e.g.*, *Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter the remainder of the five-step process, much less the overall outcome."); *Desando v. Astrue*, Civ. No. 07-1823, 2009 WL 890940, at *5 (M.D. Pa. Mar. 31, 2009) ("Because the ALJ found that [the claimant] did have severe impairments sufficient to move beyond the second step of the five-step sequential evaluation process, his failure to address fibromyalgia is irrelevant and harmless.").

    2. STEP THREE

Plaintiff next argues that the ALJ's findings at step three are not based on substantial evidence. The Court does not agree.

At step three, the ALJ must use a "special technique" designed for the evaluation of mental impairments, outlined in the regulations, to first determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). To do this, the ALJ will "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings." *Id.* (citing 20 C.F.R. § 404.1521). If this evaluation shows that the claimant has a medically determinable mental impairment, the ALJ must "specify the symptoms, signs,[7] and laboratory findings[8] that substantiate the presence of the impairment(s) and document [the] findings in accordance with paragraph (e) of this section," *id.*, and "incorporate the pertinent findings and conclusions based on the

---

[7]     According to the regulations, "signs"

> means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

[20 C.F.R. § 404.1502(g).]

[8]     20 C.F.R. § 404.1502(c) defines "laboratory findings" as follows:

> One or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests.

14

technique" into the written decision, *id.* § (e)(4). "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)" and "must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." *Id.*

In this case, under Listings 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (Trauma and stressor-related disorders), Plaintiff must fulfill the Paragraph "A" criteria, and fulfill either the paragraph "B"[9] or "C"[10] criteria of 20 C.F.R. pt. 404, subpt. P, app. 1.[11]

To satisfy "B" criteria, Plaintiff must have at least one extreme or two marked limitations in the following four areas: (1) understand, remember, or apply information; (2) interact with

---

[9]     20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.00(A)(2)(b) states:

> To satisfy the paragraph B criteria, your mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. (When we refer to "paragraph B criteria" or "area[s] of mental functioning" in the introductory text of this body system, we mean the criteria in paragraph B of every listing except 12.05.).

[10]    20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.00(A)(2)(c) states:

> To satisfy the paragraph C criteria, your mental disorder must be "serious and persistent;" that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both "C1" and "C2" (see 12.00G). (When we refer to "paragraph C" or "the paragraph C criteria" in the introductory text of this body system, we mean the criteria in paragraph C of listings 12.02, 12.03, 12.04, 12.06, and 12.15.)

[11]    Since the ALJ found that Plaintiff did not satisfy either "B" or "C," the ALJ did not consider "A," which is appropriate. *See, e.g.*, *Andrew S. v. Comm'r of Soc. Sec.*, Civ. No. 18-17212, 2022 WL 795746, at *3 n.2 (D.N.J. Mar. 16, 2022).

others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.12.00(A)(2)(b). "Extreme" is defined as "not able to function in this area independently, appropriately, effectively, and on a sustained basis," Appendix 1 at 12.00(F)(2)(e), and "marked" is defined as "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited," Appendix 1 at 12.00(F)(2)(d).

The ALJ concluded that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of the relevant listings. (AR 30.) In so concluding, the ALJ found that Plaintiff had only a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation for adapting or managing oneself. (*Id.*)

Plaintiff argues that this was an error because the ALJ only used evidence that Plaintiff can perform daily tasks and functions in his personal life in finding that Plaintiff does not suffer from an impairment or combination of impairments that meets listed impairments in Appendix 1. Plaintiff is indeed correct that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." (ECF No. 10 at 27 (citing *Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981).)[12] But activities of daily life may be used by the ALJ as probative evidence of non-disability. *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x

---

[12] Pursuant to 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(3)(b), "[claimant's] use the same four areas of mental functioning in daily activities at home and in the community that you would use to function at work. . . . Information about your daily functioning can help us understand whether your mental disorder limits one or more of these areas; and, if so, whether it also affects your ability to function in a work setting." Activities of daily living may be probative evidence in determining whether a claimant is disabled, and ALJ's are instructed to evaluate all probative evidence in making their disability determinations. *Carpenter v. Astrue*, 537 F.3d 1264, 1269 (10th Cir. 2008) (reversing in part because the ALJ failed to consider all of the probative evidence relevant to claimant's mental impairment).

16

111, 118 (3d Cir. 2012) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 and stating that the "ALJ was required to consider [the claimant's] activities of daily living to assess the severity of her mental impairments"). This is especially true in circumstances where Plaintiff's claims are inconsistent with their activities of daily life. *Williams v. Barnhart*, 140 F. App'x. 932, 936 (11th Cir. 2005) (claimant's allegation that his low I.Q. prevented him from unskilled work was contradicted by his ability to home school his high school-aged child). Here, Plaintiff's activities of daily living were just *one* of several pieces of evidence considered by the ALJ. For example, the ALJ's paragraph "B" findings are nearly identical to the New Jersey Division of Disability Service's findings as to Plaintiff's mental limitations.

> DDS also found that the claimant has depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorders, with mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. DDS concluded that the claimant is able to understand, remember, and execute 2-step instructions and is able to sustain concentration, persistence, or pace for simple, routine task.

[(AR at 33.)]

The ALJ also cited evidence from the state examiner, Dr. Baharlias, who found that Plaintiff was able to perform a three-step mathematical problem, serial 7's, and spell "world" backwards quickly and correctly. (*Id.* 863-864). A psychiatric evaluation from March 20, 2019 also contained similar findings as Plaintiff was "able to recall 3/3 words immediately and after 5 minutes, name 3 of 4 United States presidents before the current one, and perform serial 7's correctly." (*Id.* at 32 (citing AR 573).) This is not a case where the ALJ only relied on activities of daily living when evaluating Plaintiff's mental impairments; instead, the ALJ's decision was based on substantial evidence in the record consisting of objective medical evidence *and* activities of daily living, which is permissive. *See Cunningham*, 507 F. App'x at 118; *see also Michele C.*

17

*v. Kijakazi*, Civ. No. 21-2051, 2022 WL 5242283, at *11 (D.N.J. Oct. 6, 2022) (affirming ALJ who considered claimant's daily activities and medical evidence when determining Plaintiff's mental impairments and limitations).

    3.  S<small>TEP</small> 4 – RFC

Finally, Plaintiff argues that the ALJ erred at step four in finding that the claimant can perform medium work because the ALJ is alleged to have failed to rely on substantial evidence as to why Plaintiff was capable of such work given Plaintiff's non-severe impairments such as hypertension, hyperlipidemia, sleep apnea, and obesity and his other psychiatric impairments. (ECF No. 10 at 40-48.)

In reaching his conclusion that Plaintiff can do medium work,[13] the ALJ found that the allegations "of total disability [we]re not consistent with the overall record," and detailed what the ALJ relied on in the record to reach this conclusion. (AR 31-34.) The ALJ found that Plaintiff "is able to drive without any issues"; "thinks he has arthritis in his arms, but this was never diagnosed"; and had "stated that he has no issues with sleeping" and "gets 9 to 11 hours of sleep a night." (*Id.* at 32.) While the ALJ noted that Plaintiff did not like interacting with people and "gets shaky sometimes, . . . medication and food help with these situations" and the ALJ found that Plaintiff "d[id] not have issues performing self-care. He is able to take care of his pets and help with the laundry" and "has no issues with grocery shopping." (*Id.*)

The ALJ acknowledged Plaintiff's psychiatric impairments, but he also noted that Plaintiff had reported that "his last hospitalization was 10 years ago" and treatment notes generally indicated that Plaintiff's "memory and concentration were . . . intact," which was supported by the

---

[13]    Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, . . . he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

psychiatric evaluation notes. (*Id.*) The ALJ also acknowledged that Plaintiff reported depression and anxiety, but found that this "was manageable," and Plaintiff reported improvement as a result of "engaging in such activities as horseback riding, using the treadmill, doing errands, and spending time with friends." (*Id.*) The ALJ further considered that DDS had "found that [Plaintiff] has no exertional limits" and was "able to relate, self-manage, and adapt with some difficulty but not marked difficulty." (*Id.* at 33.)

In view of the above, the ALJ concluded that Plaintiff's "treatment notes [we]re inconsistent with the allegations of anxiety, frequent panic attacks, debilitating depression, and significant impairment." (*Id.*) And "[b]ased on the claimant's activities," the ALJ found that the "the record indicates that [Plaintiff] remains capable of simple work involving only occasional contact with supervisors, co-workers, and the public" and that Plaintiff "is limited to medium work, with no climbing of ladders, ropes, or scaffolds, and no exposure to unprotected heights or hazards." (*Id.*)

Here, the Court finds that the ALJ's assessment that Plaintiff can perform medium work was based on substantial evidence in the record and should be affirmed. An ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see also Diciano v. Comm'r of Soc. Sec.*, Civ. No. 18-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) ("The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis."). In this case, the ALJ detailed the record evidence that he relied on in a narrative discussion, considered Plaintiff's exertional and non-

19

exertional functional limitations flowing from his impairments, and formulated an RFC that reflected the ALJ's conclusions related to those limitations. The ALJ considered the physical activities that Plaintiff could engage in – driving without issue, grocery shopping, taking care of his pets, spending time with family and friends, doing errands, helping with laundry, using the treadmill, and horseback riding – as well as the medical evidence regarding Plaintiff's physical and psychological state, including memory and concentration being generally "intact," to find that Plaintiff should be limited to medium work with no climbing of ropes, scaffolds, and ladders and no exposure to unprotected heights or hazards.

Based on its own review of the record, the Court finds that the ALJ sufficiently examined the evidence and discussed his reasoning behind the RFC based on the whole record, and the Court will thus affirm. *See Wellington W. v. Kijakazi*, Civ. No. 22-05042, 2023 WL 5551030, at *6 (D.N.J. Aug. 29, 2023) ("[T]he ALJ did not merely announce her RFC determination without providing any support or explanation. She appropriately evaluated the objective medical record . . . and provided a clear presentation of her reasoning . . . ."); *Jose S. v. Kijakazi*, Civ. No. 19-19077, 2023 WL 5125533, at *4 (D.N.J. Aug. 9, 2023) ("The ALJ's detailed examination of the objective medical evidence . . . indicates that his RFC determination is supported by substantial evidence and that it resulted from his 'careful consideration of the entire record.'").

IV.   **CONCLUSION**

For the reasons set forth above, and other good cause shown, the Commissioner's decision to deny Plaintiff benefits is **AFFIRMED**. An appropriate Order follows.

Dated: September 30, 2023

*[signature: Georgette Castner]*

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**